UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**Mark Winkle,**

        *Plaintiff*,

**v.**                                                  **Case No.: 3:19-cv-242**
                                                          **Judge Thomas M. Rose**

**EdisonLearning, Inc.,**

        *Defendant.*

___

**ENTRY AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT EDISONLEARNING'S MOTION TO DISMISS AMENDED COMPLAINT, ECF 8. PLAINTIFF'S CLAIMS OF RETALIATION AND VIOLATION OF OHIO PUBLIC POLICY ARE DISMISSED. IN ALL OTHER RESPECTS, THE MOTION IS DENIED.**

___

Pending before the Court is Motion of Defendant EdisonLearning, Inc.'s Motion to dismiss Plaintiff Mark Winkle's claims pursuant to Fed. R. Civ. P. 12(b)(6). ECF 8. Defendant asserts Plaintiff fails to draw any causal connection between his race, age, retaliation or policy-related actions and his termination. Defendant also claims Plaintiff does not allege an at-will employment relationship, as required to sustain a violation of public policy claim.

### I. Background

Plaintiff alleges he is a fifty-nine-year-old Caucasian who began employment as an English teacher with Defendant EdisonLearning, Inc., at a charter school operated by Defendant, Bridgeport Academy on July 23, 2016. ECF 7, Am. Compl. at ¶ 7. On October 13, 2016,

Plaintiff alleges that during his normal work hours he was threatened with a physical assault by an African-American student at his work location. Id. at ¶ 8. Plaintiff proceeded to "complain[] and report[] this matter to Defendant's Program Manager and Administrative Staff[,]" but allegedly did not receive any support or assistance. Id.

Plaintiff then reported the incident to the Dayton Police Department. Id. According to Plaintiff, the student involved in the incident is the nephew of Defendant's Bridgeport Secretary, Theresa Turner, "an African American [who] is the best friend of Bridgeport's then Program Manager, D'Juana McAtee, an African American." Id. Plaintiff alleges that subsequently, "McAtee retaliated against [him] by falsely accusing him of violating the Family Educational Rights and Privacy Act (FERPA) and [seeking] to impose discipline on him in respect to same." Id.

Following the October 13, 2016 incident, Plaintiff alleges that he was placed on administrative leave as a result of "McAtee's false allegations about [Plaintiff's actions] and also because [he] refused to provide inaccurate attendance information to the State of Ohio Department of Education which would have resulted in Defendant receiving additional state funding that it was not entitled to." Id. at ¶ 9. Plaintiff alleges that his "placement on administrative leave was in retaliation for exercising his lawful right to file criminal charges against an African-American student and to intimidate him with respect to pursuing the criminal charges, and for his refusal to falsify education records as requested by Defendant, so that Defendant could receive additional funding from the state of Ohio." Id.

After Defendant reinstated Plaintiff to active employment on October 25, 2016, Plaintiff alleges that "McAtee continued to harass/retaliate against Plaintiff, by locking him out of Defendant's computer system and the email system as well as denying him access to student

records, assigning him tasks not required of other teachers, and public[ly] humiliating him in front of other teachers, officials and students." Id. at ¶ 10.  Plaintiff further alleges that Defendant also requested that Gamal Brown, who is also an African American, and its EdisonLearning's State Superintendent, come down from Cleveland, Ohio to deal with Plaintiff's "problem." Id.

In December 2016, "Plaintiff filed charges of racial, sex, religious, and retaliation discrimination against Defendant with the Ohio Civil Rights Commission." Id. at ¶ 11.  On February 22, 2017, "one of Defendant's students, an African American, allegedly advised Defendant's management team that Plaintiff was sitting at his desk with his eyes closed, and allegedly recorded same on his phone, without Plaintiff's permission, and later provided the recording to Defendant's management team." Id. at ¶ 12.  When Defendant approached Plaintiff about the incident, "Plaintiff advised Defendant[ EdisonLearning's] New Jersey Personnel Director that he was not sleeping, but rather resting his eyes after looking at his computer screen for numerous and extended hours that day." Id. at ¶ 13.

After hearing Plaintiff's take on the incident, and "without further investigating Plaintiff's assertions, Defendant elected to terminate Plaintiff on February 23, 2017 for allegedly 'sleeping on the job.'" Id.  According to Plaintiff, "this termination and the alleged reason for same was a subterfuge for Defendant's aforesaid discrimination and its public policy violations." Id.  That same day, "Plaintiff filed an additional charge with the [OCRC] based on his termination and predicated on race, sex and retaliation discrimination." Id. at ¶ 14.

According to Plaintiff, Defendant requested that he "make false reports about student's attendance because it would financially benefit Defendant who received state and federal funding assistance through the State Board of Education" and "indicate to the state of Ohio that students had reported to Defendant's facility…when they had not." Id. at ¶ 15.  "When Plaintiff refused

3

and objected to [Defendant's] requests, because they violated state education law, Defendant [allegedly] retaliated against Plaintiff by treating him differently than other teachers, who complied with Defendant's unlawful requests and escalated its already existing harassment towards him." Id.  This series of events "ultimately result[ed] in [Plaintiff's] termination on February 23, 2017." Id.

Plaintiff asserts the following causes of action against EdisonLearning: (1) racial discrimination in violation of Ohio Rev. Code §§ 4112.02 and 4112.99 (¶¶ 16-20); (2) age discrimination in violation of Ohio Rev. Code § 4112.14  (¶¶ 21-24); (3) retaliation in violation of Ohio Rev. Code §§ 4112.02 and 4112.99 (¶¶ 25-28); (4) Ohio public policy in pursuit of criminal charges (¶¶ 29-35); and (5) Ohio public policy in violation of Ohio education law (¶¶ 36-44).  Plaintiff's racial discrimination claim is premised upon the allegation that "Plaintiff was treated differently [than] Defendant's African-American employees, in respect to the terms and conditions of his employment including being retaliated against for reporting the African-American student who threatened him to the Dayton Police Department." ECF 7, Am. Compl. at ¶ 18.  Plaintiff further alleges that he "was also subjected to harassment and retaliation and a racially hostile work environment due to the fact that Defendant's management team was comprised of African-American employees who became upset when Plaintiff elected to file criminal charges against the African-American student who had threatened to assault [him]…" Id.  According to Plaintiff, Defendant's "decision to terminate [him] was necessarily predicated on his race, Caucasian, as Plaintiff was one of the few Caucasian employees at the Bridgeport Academy." Id. at ¶ 19.

Plaintiff's age discrimination claim is premised upon the allegation that "Plaintiff was treated differently than Defendant's employees under the age of 40 and/or substantially younger

4

than him." Id. at ¶ 23. In relation to both of these claims, Plaintiff asserts that on "[o]ne occasion, at a company-wide meeting[,] Defendant's agents and representatives referred to Plaintiff as 'an old white guy that teaches English Language Arts.'" Id. Plaintiff further alleges that "[a]fter that meeting, Defendant's Program Manager said several times 'that old man's got to go.'" Id. According to Plaintiff, "these adverse age-related statements were an indication of Defendant's bias against him due to his age and was a motivating factor in the decision to later terminate him." Id. In addition, "Plaintiff also believes that Defendant when being informed by a young student that Plaintiff was allegedly sleeping on the job, perceived that the statement may have been accurate due to Plaintiff's age." Id.

Under his retaliation claim, Plaintiff alleges that Defendant retaliated against him after he "filed charges of employment discrimination against Defendant with the [OCRC]." Id. at ¶¶ 26-27. According to Plaintiff, "[t]he decision to terminate Plaintiff was motivated in part by the filing of [his] civil rights charges, and not because he ha[d] allegedly drifted off to sleep shortly before his termination." Id. at ¶ 27. And lastly, in his two claims for violation of public policy, Plaintiff alleges that his employment was terminated because he exercised his legal right to file a charge of criminal conduct with the police and because he "objected to Defendant's unlawful actions and refused to falsely report student information when demanded by Defendant." Id. at ¶¶ 31, 38.

## II. Standard of Review

"The purpose of a Rule 12(b)(6) motion to dismiss is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Bihn v. Fifth Third Mortg. Co.*, 980 F. Supp. 2d 892, 897 (S.D. Ohio 2013) (citing *Mayer v. Mylod*, 988 F. 2d 635, 638 (6th Cir. 1993)). Moreover, the purpose of the

5

motion is to test the formal sufficiency of the statement of the claim for relief. *Id.* "[F]or the purposes of a motion to dismiss, the complaint must be construed in the light most favorable to the plaintiff and its allegations taken as true." *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232 (1974)).

To survive a 12(b)(6) motion to dismiss, a plaintiff must provide more than labels and conclusions; a formulaic recitation of the elements of a cause of action is not enough. *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007). Further, the factual allegations must be enough to raise a right to relief above the speculative level and must also do something more than merely create a suspicion of a legally cognizable right. *Id.* However, the Court is not bound to accept as true a legal conclusion couched as factual allegation or unwarranted factual inferences. *Id.* at 555; *Morgan v. Church's Fried Chicken*, 829 F. 2d 10, 12 (6th Cir. 1987); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Moreover, only well-pleaded facts are construed liberally in favor of the party opposing the motion to dismiss. *Lillard v. Shelby County Bd. Of Educ.*, 76 F. 3d 716, 726 (6th Cir. 1996).

**III. Analysis**

Under Ohio law, it is unlawful for "any employer, because of the race…of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." Ohio Rev. Code § 4112.02(A). Plaintiff asserts a claim for reverse discrimination, "where a member of a dominant group claims discrimination based on race or sex." *Martin v. Block Commc'ns, Inc.*, 2017-Ohio-1474, 2017 WL 1422889, at *5 (6th Cir. 2017); see also ECF 7, Am. Compl. at ¶ 17. "In rare cases, an employee may establish discriminatory intent through direct evidence that 'the employer more likely than not

was motivated by discriminatory intent.'" *Martin*, 2017 WL 1422889, at *5 (quoting *Mauzy v. Kelly Servs.*, 664 N.E.2d 1272, 1279 (Ohio 1996)).  Direct evidence exists where, for example, "a statement by an employer directly shows there is a discriminatory motive." Id. at *5 (citing *Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998) ("Such [direct] evidence would take the form, for example, of an employer telling an employee, 'I fired you because you are disabled.'")).

As regards age discrimination under Ohio law, "[n]o employer shall…discharge without just cause any employee aged forty or older who is physically able to perform the duties and otherwise meets the established requirements of the job and laws pertaining to the relationship between employer and employee." Ohio Rev. Code § 4112.14(A).  "Discriminatory intent may [] be established by direct evidence of age discrimination." *Byrnes v. LCI Commc'n Holdings Co.*, 672 N.E.2d 145, 148 (Ohio 1996).

In determining whether certain statements represent direct evidence of age discrimination, courts consider "(1) whether the statements were made by a decision-maker or by an agent within the scope of his employment; (2) whether the statements were related to the decision-making process; (3) whether the statements were more than merely vague, ambiguous or isolated remarks; and (4) whether they were made proximate in time to the act of termination." *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 477–78 (6th Cir.2002)[1] (citing *Cooley v. Carmike Cinemas*, Inc., 25 F.3d 1325 (6th Cir.1994).  "[N]one of these factors is individually

---

[1] The discrimination provisions of the Ohio Civil Rights Act, Ohio Rev. Code § 4112 et seq., are interpreted in a manner consistent with federal discrimination law. See *Martin v. Block Commc'ns, Inc.*, No. L-16-1213, 2017 WL 1422889, at *5 (Ohio Ct. App. Apr. 21, 2017) (citing *Plumbers v. Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.*, 421 N.E.2d 128, 131 (Ohio 1981)); see also *Skelton v. Sara Lee Corp.*, 249 F. App'x 450, 463 (6th Cir. 2007) ("This Court has acknowledged that when 'analyzing claims arising under Ohio Rev. Code § 4112, Ohio courts have adopted the framework established in federal case law concerning Title VII and the [ADEA].")).

dispositive of age discrimination, but rather, they must be evaluated as a whole, taking all of the circumstances into account" Id.

A plaintiff may establish a claim of discrimination either by presenting direct evidence of discrimination or by presenting circumstantial evidence that would support an inference of discrimination. *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997). Direct evidence is where an employer's statement directly shows discriminatory motive. See *Schlett v. Avco Fin. Servs., Inc.*, 950 F. Supp. 823, 828 (N.D. Ohio 1996). The Sixth Circuit stated in *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994), that evidence that would require the jury to infer a fact is not direct evidence. Direct evidence, in the form of verbal comments, will be similar to an employer telling its employee, "I fired you because you are disabled." *Smith v. Chrysler Corp.,* 155 F.3d 799, 805 (6th Cir. 1998).

The utterance by an agent of EdisonLearning identifying Plaintiff as "an old white guy that teaches English Language Arts," ECF 7, Am. Compl. at ¶ 23 combined with the allegation that "[a]fter that meeting, Defendant's Program Manager said several times 'that old man's got to go,'" Id. ¶ 23, if proven, would be sufficient to show discriminatory motive. Compare *Johnson v. Evangelical Lutheran Good Samaritan Soc'y*, No. CV-04-209-ST, 2005 WL 2030834, at *6 (D. Or. Aug. 23, 2005) ("Clemens told Fox that Johnson was "black ... [and] has to go or I go," to which Fox responded "okay, okay, she's black, she's got to go." Honeycutt Depo, pp. 9–11. This is direct evidence of discrimination."), and *Bradley v. Upshur Cty., Texas*, No. 6:08-CV-261, 2009 WL 10677356, at *4 (E.D. Tex. Aug. 7, 2009) ("[Plaintiff] has sufficiently demonstrated direct evidence of race discrimination…. Crittenden testified that LaGrone "said in reference to Ms. Bradley, 'That little N has got to go,' and she did not use just N.").

Identifying someone by their inclusion in a protected group as someone who "has got to

8

go" is direct evidence that they were subsequently terminated for a prohibited reason. This is distinct from cases where a supervisor's remark that the plaintiff's birthday was "cause for concern" was found ambiguous because it did not necessarily suggest animus on the part of the speaker nor did it concern the plaintiff's employment. *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1026 (6th Cir. 1993); see also *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 477 (6th Cir. 2002) (comment that plaintiff was "little old gray-haired man waiting to retire" was ambiguous because the plaintiff had announced his retirement and the comment did not suggest an adverse employment decision); *Scott v. Potter*, 182 Fed. Appx. 521, 526 (6th Cir. 2006) (statement "[w]hy don't you retire and make everybody happy" did not constitute direct evidence because "retire" is analogous to "quit," not necessarily suggesting "age" animus). *McCartt v. Kellogg USA, Inc.*, 139 F. Supp. 3d 843, 850 (E.D. Ky. 2015). Plaintiff's reverse race discrimination allegations are sufficient to survive a motion to dismiss.

In support of his claim for age discrimination, Plaintiff points to the same statements that were allegedly uttered by Defendant's agents relating to his age. Defendant asserts Plaintiff has failed to provide any detail that would establish a temporal proximity between the one "company-wide meeting" and Plaintiff's ultimate termination. ECF 7, Am. Compl. at ¶ 23. Additionally, Defendant asserts Plaintiff's Amended Complaint fails to present facts showing that this statement was "related to the decision-making process." However, these are only two of the factors to be considered.

In determining whether certain statements represent direct evidence of age discrimination, courts consider "(1) whether the statements were made by a decision-maker or by an agent within the scope of his employment; (2) whether the statements were related to the decision-making process; (3) whether the statements were more than merely vague, ambiguous

9

or isolated remarks; and (4) whether they were made proximate in time to the act of termination." *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 477–78 (6th Cir.2002) (citing *Cooley v. Carmike Cinemas*, Inc., 25 F.3d 1325 (6th Cir.1994). "[N]one of these factors is individually dispositive of age discrimination, but rather, they must be evaluated as a whole, taking all of the circumstances into account" Id.

Plaintiff's age discrimination allegations are sufficient to survive a motion to dismiss. Discovery will reveal whether the case can survive a motion for summary judgment.

Under Ohio law, no person shall "discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice [] or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing…" Ohio Rev. Code § 4112.02(I). A claim for retaliation under Ohio law is governed by the same standard as a federal retaliation claim. See *Paynter v. Licking Memorial Health Sys.*, No. 07-328, 2007 WL 2874804, at *2 (S.D. Ohio Sept. 27, 2007) (Frost, J.). Therefore, a retaliation claim can be proven by a plaintiff through either direct evidence or "establishing a prima facie case under the *McDonnell Douglas* framework." Id. (internal quotation and citation omitted). The comments Plaintiff alleges Defendants' agents made are not direct evidence of retaliation.

In order to establish a *prima facie* case of retaliation, a plaintiff is required "to show by circumstantial evidence that [1] he or she engaged in protected activity, [2] that the defendant knew of this activity, [3] that the defendant then took an adverse employment action against the plaintiff… and [4] that there was a causal connection between the protected activity and the adverse employment action or harassment." Id.

Defendant asserts Plaintiff fails to show any causal connection between his filings with the Ohio Civil Rights Commission ("OCRC") and his ultimate termination. Plaintiff alleges that "[o]n or about December 16 and then again on December 30, 2016 [he] filed charges of employment discrimination against Defendant with the Ohio Civil Rights Commission." ECF 7, Am. Compl. at ¶ 26. Plaintiff also alleges that he was unlawfully terminated on February 23, 2017. See id. Although Plaintiff alleges acts of retaliation, Plaintiff fails to show any causal connection between the alleged retaliatory acts and his termination.

Defendant terminated Plaintiff "less than two months after he filed the [OCRC] charges." Id. at ¶¶ 12-13, 27. This "dispel[s] an inference of retaliation based on [the] temporal proximity" between Plaintiff's OCRC filings and his termination. *Green v. Central Ohio Transit Auth.*, 647 F. App'x 555-56, 560 (6th Cir. 2016) (affirming grant of defendant's summary judgment where employee "was terminated approximately three months after filing a second charge against [defendant] for discriminating against her on the basis of her disability"). Temporal proximity alone is insufficient to support an inference of retaliatory discrimination if there is no other "compelling evidence." *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000) (citing *Parnell v. West*, 1997 WL 271751, *2 (6th Cir.1997)). See, also, *Lang v. Illinois Dept. of Children & Family Serv.* (7th Cir. 2003), 361 F.3d 416, 419 ("[c]lose temporal proximity provides evidence of causation * * * and may permit a plaintiff to survive summary judgment provided that there is also other evidence that supports the inference of a causal link"). The United States Supreme Court has noted that "cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity

11

must be 'very close.'" *Clark County School Dist. v. Breeden*, 532 U.S. 268, 273 (2001); see also *Aycox v. Columbus Bd. of Edn.*, 2005-Ohio-69, ¶ 20

Because Plaintiff has failed to allege a causal connection between the alleged retaliatory acts, his OCRC filings, and his ultimate termination, Plaintiff's claim for retaliation will be dismissed.

Plaintiff asserts two claims contending that the termination of his employment violated the public policy of Ohio. He alleges that his employment was terminated because: (1) he filed a charge of criminal conduct with the police, and (2) he "objected to Defendant's unlawful actions and refused to falsely report student information when demanded by Defendant." ECF 7, Am. Compl. at ¶¶ 29-35, 36-44. To the extent Plaintiff alleges that EdisonLearning retaliated against him or "subjected him to an increasingly more hostile working environment" for these activities, such alleged grievances cannot form the basis of a public policy claim. Id. at ¶¶ 32, 39. The Ohio Supreme Court has held that an employee may bring a tort suit if that employee was terminated in violation of a specific public policy. See *Greeley v. Miami Valley Maintenance Contractors, Inc.*, 551 N.E.2d 981, 987 (Ohio 1990). The tort applies to terminations and constructive discharges, and courts have repeatedly declined the opportunity to expand the tort to other employment decisions, including retaliation and harassment. See, e.g., *Strausbaugh v. Ohio Dep't of Transp.*, 782 N.E.2d 92, 100-01 (Ohio Ct. App. 2002) (declining to establish a cause of action for harassment in violation of public policy); *Noble v. Genco I, Inc.*, No. 10-648, 2010 WL 5541046, at *5 (S.D. Ohio Dec. 30, 2010) (dismissing plaintiff's "claim for retaliation in violation of public policy") (Marbley, J.).

Although employment relationships in Ohio are generally governed by the common-law doctrine of employment at will, Ohio law recognizes "a cause of action in tort for wrongful

discharge in violation of public policy." *Wiles v. Medina Auto Parts*, 96 Ohio St.3d 240, 773 N.E.2d 526, 529 (2002) (plurality opinion). The public policy exception to the employment-at-will doctrine applies only to at-will employees. See *Haynes v. Zoological Soc. of Cincinnati*, 73 Ohio St.3d 254, 652 N.E.2d 948 (1995), syllabus. A claim for wrongful termination in violation of public policy has been permitted only for employees at will, not contract employees. *Schutte v. The Danis Cos.*, 141 Ohio App. 3d 824, 833, 753 N.E.2d 899, 906 (2001). Thus, "to establish a claim of tortious violation of public policy, [Plaintiff] ha[s] to plead and prove that he was an employee at will." *Kusens v. Pascal Co., Inc.*, 448 F.3d 349, 364 (6th Cir. 2006), quoting *Strasbaugh v. Ohio Dept. of Transportation*, 150 Ohio App.3d 438, 449, 782 N.E.2d 92, 2002 - Ohio - 6227 (2002). Plaintiff has failed to plead that he was an at-will employee. See *Meadows*, 2007 WL 9760155, at *7 (granting defendant's motion to dismiss where plaintiff failed to "allege that her employment relationship was at-will"). Plaintiff does not allege that he was an at-will employee of defendant and does not address Defendant's argument that this alone defeats his claims for termination in violation of public policy. Thus, Plaintiff's public policy claims fail.

**IV    Conclusion**

In sum, this Court **GRANTS** Defendant's Motion to Dismiss, ECF 8, as regards Plaintiff's retaliation and violation of public policy claims. The Court **DENIES** Defendant's Motion to Dismiss as regards Plaintiff's reverse race and age discrimination claims.

**DONE** and **ORDERED** this Thursday, August 06, 2020.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE
